UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., and SPRINT COMMUNICATIONS, INC., f/k/a Sprint Nextel Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MARY WYNNE, in her Official Capacity as Chief Judge of the Oglala Sioux Tribal Court; OGLALA SIOUX TRIBE UTILITIES COMMISSION, JOE RED CLOUD, in his Official Capacity as Commissioner of the Oglala Sioux Tribe Utilities Commission; IVAN BETTELYOUN, in his Official Capacity as Commissioner of the Oglala Sioux Tribe Utilities Commission; DAVID TERRY MILLS, in his Official Capacity as Commissioner of the Oglala Sioux Tribe Utilities Commission; and ARLENE CATCHES THE ENEMY, in her Official Capacity as Commissioner of the Oglala Sioux Tribe Utilities Commission;<br><br>Defendants. | 4:15-CV-04051-KES<br><br><br><br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND STAYING CASE |

Pending is a motion for preliminary injunction filed by Sprint Communications Company, L.P., and Sprint Communications, Inc. (collectively, Sprint). Defendants oppose the motion. For the following reasons,

the motion for preliminary injunction is denied and this action is stayed pending exhaustion of tribal remedies.

## BACKGROUND

Sprint Communications, Inc. (Sprint Inc.) is the parent company of Sprint Communications Company (Sprint Communications). Sprint Inc. is a Kansas corporation and does not directly provide any telecommunications services. Sprint Communications is a Delaware limited partnership with its offices located in Kansas. Sprint Communications is an interexchange carrier (IXC) and is authorized by the Federal Communications Commission (FCC) to provide interstate telecommunications services.

The Oglala Sioux Tribal Utilities Commission (OSTUC) was formally established in 2013 as a subdivision of the Oglala Sioux Tribe. The OSTUC is responsible for the exercise of tribal regulatory authority over all utility systems on the Pine Ridge Indian Reservation. Defendants Joe Red Cloud, Ivan Bettelyoun, David Terry Mills, and Arlene Catches The Enemy are commissioners of the OSTUC and are named as defendants in their official capacities only. Defendant Mary Wynne is the Chief Judge of the Oglala Sioux Tribal Court and is also named as a defendant in her official capacity only.

As an IXC, Sprint Communications delivers long-distance calls from one local area to another. When an individual makes a long-distance telephone call, the call originates with the local exchange carrier (LEC) serving the individual making the call and is transported by the IXC selected by the calling individual to the LEC serving the individual receiving the call. The IXC either owns the

facilities over which the call travels between originating and terminating LECs or it enters into arrangements with other IXCs to route the calls over their facilities. IXCs pay "originating" and "terminating" access charges to the LECs that serve individuals who initiate and receive long-distance calls, respectively.

In 2014, the OSTUC initiated seven rulemaking proceedings involving utility providers on Pine Ridge and adopted 12 orders. In one of those orders, U-1-2014, the OSTUC created: a registration requirement for all utilities; an annual reporting requirement and payment of a utility fee; a process for handling consumer complaints; guidance for imposing taxes, fees, and surcharges on consumers; and initiation and termination of service requirements. *See* Docket 16-6 (final order dated September 9, 2014). Later, the OSTUC imposed a fine of $1,000 per day for each day a utility failed to register in compliance with requirements set forth by the OSTUC. Docket 16-7.

Sprint did not participate in the development or implementation of U-1-2014. Sprint Communications has not registered with or obtained a business license from the OSTUC. Several telecommunications companies, including Sprint Communications, have refused to comply with the requirements imposed by the OSTUC. As a result of that noncompliance, the OSTUC filed a complaint against those carriers, including Sprint,[1] in the Oglala Sioux Tribal Court. Docket 16-13 (tribal court complaint).

---

[1] In the tribal court complaint, Sprint Nextel Corporation is the named defendant. Docket 16-13 at 2. Sprint Inc. was formerly known as Sprint Nextel Corporation.

Subsequently, Sprint filed its complaint in this matter. Sprint argues that the tribal regulatory process is a disguised effort to compel IXCs to pay Native American Telecom-Pine Ridge (NAT-PR), a tribal LEC, for terminating access charges associated with an access stimulation scheme[2] run on Pine Ridge. *See* Docket 1 at 2-5, 11-12. Sprint seeks a declaratory judgment that neither Sprint Inc. nor Sprint Communications is subject to regulation by the OSTUC, and an order permanently enjoining the OSTUC from proceeding against Sprint. *Id.* at 18-19. Sprint requested a preliminary injunction.[3] Docket 12. In support, Sprint asserts that it does not have to exhaust its tribal court remedies because it is plain that the tribal court does not have jurisdiction over either Sprint entity.

## DISCUSSION

A federal court must have jurisdiction over a matter before it grants preliminary relief. *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1422 (8th Cir. 1996). "[W]hether a tribal court has adjudicative authority over nonmembers is a federal question." *Plains Commerce Bank v. Long Family Land*

---

[2] Access stimulation, also known as traffic pumping, involves a relationship between an LEC with a high terminating switched access charge and a provider of high volume calling operations such as free conference calling, chat lines, or adult entertainment calls. The LEC installs the necessary equipment at or near its facility and terminates the calls there. The LEC bills the IXC for the terminating switched access service associated with the calls. The LEC and the high volume calling business then share the access revenue. *See In the Matter of Connect America Fund; A National Broadband Plan for Our Future*, 26 FCC Rcd. 17663, at ¶¶ 656-57 (2011).

[3] Sprint also moves for leave to supplement the record to update an affidavit regarding the services provided by Sprint Communications on Pine Ridge. The motion to supplement the record (Docket 33) is granted.

& Cattle Co., 554 U.S. 316, 324 (2008) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987)); *see also Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852 (1985). Thus, this court has jurisdiction to decide this matter.

Defendants point to no federal statute or treaty specifically authorizing tribal jurisdiction in this case so any tribal jurisdiction "must arise from [the Oglala Sioux Tribe's] 'retained or inherent sovereignty.'" *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 657 (8th Cir. 2015) (quoting *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 649-50 (2001)). The "pathmarking case" on inherent tribal jurisdiction over nonmembers is *Montana v. United States*, 450 U.S. 544 (1981). *Nevada v. Hicks*, 533 U.S. 353, 358 (2001). "Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997) (summarizing *Montana's* rule). "'The burden rests on the tribe' to establish that one of the *Montana* exceptions applies." *Belcourt Pub. Sch. Dist.*, 786 F.3d at 658 (quoting *Plains Commerce Bank*, 554 U.S. at 330).

Despite the limits on tribal jurisdiction, the Supreme Court has recognized "the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut.*, 480 U.S. at 14. "This policy reflects the fact that Indian tribes retain 'attributes of sovereignty over both their members and their

5

territory.' " *Id.* (quoting *United States v. Mazurie*, 419 U.S. 544, 557 (1975)). Given the long-held policy considerations in promoting tribal sovereignty, the doctrine of tribal exhaustion requires parties to challenge tribal jurisdiction in tribal court before seeking relief in a federal court. *Hicks*, 533 U.S. at 369; *Nat'l Farmers*, 471 U.S. at 855-56 ("[T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions. We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge."); *Iowa Mut.*, 480 U.S. at 16 ("Promotion of tribal self-government and self-determination require[] that the Tribal Court have 'the first opportunity to evaluate the factual and legal bases for the challenge' to its jurisdiction.").

The exhaustion requirement is "a prudential exhaustion rule, in deference to the capacity of tribal courts 'to explain to the parties the precise basis for accepting [or rejecting] jurisdiction.' " *Strate*, 520 U.S. at 450 (quoting *Nat'l Farmers*, 471 U.S. at 857). In *National Farmers*, the Supreme Court recognized three exceptions to the tribal exhaustion doctrine: (1) where "tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith;"

6

(2) where the case "is patently violative of express jurisdictional prohibitions;" and (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Nat'l Farmers*, 471 U.S. at 856 n.21. The Supreme Court has also recognized that when "it is plain that [tribal jurisdiction does not exist], the otherwise applicable exhaustion requirement must give way, for it would serve no purpose other than delay." *Strate*, 520 U.S. at 459 n.14 (internal citation omitted). Exhaustion is only excused under *Strate's* exception when the exercise of tribal jurisdiction "is frivolous or obviously invalid under clearly established law." *DISH Network Serv., L.L.C. v. Laducer*, 725 F.3d 877, 883 (8th Cir. 2013).

In this case, the central question is whether any Sprint entity is subject to Oglala Sioux Tribal regulatory and adjudicative authority under *Montana* and its progeny. Sprint argues that tribal exhaustion on that question is not required because it is plain that tribal jurisdiction does not exist. According to Sprint, the Oglala Sioux Tribe plainly lacks jurisdiction because Sprint has no activities on Pine Ridge and because Congress has determined that telecommunication regulation is exclusively a federal function.

I.   **Activities on Reservation**

Sprint contends that "Sprint Communications[4] has no facilities, employees or activity on [Pine Ridge]. It delivers all of the long-distance traffic

---

[4] Sprint also contends that Sprint Inc. is clearly not on Pine Ridge because it is only a holding company and is not certificated by the FCC or the South Dakota Public Utilities Commission (SDPUC) to provide telecommunications services and for that reason tribal jurisdiction over Sprint Inc. plainly does not exist. *See* Docket 13 at 18. Because the court is deferring

7

destined for parties on [Pine Ridge] to SDN, Great Plains, or Mt. Rushmore, or to Inteloquent to deliver to NAT-PR. Any traffic leaving the reservation goes first to Golden West, then to SDN in Sioux Falls before reaching Sprint Communications' network." Docket 13 at 17. According to Sprint, Sprint Communications only has three customers on Pine Ridge, although it is unclear whether any of the three customers is a tribal member. *Id.* at 18. Defendants respond that the small number of customers is sufficient to establish that Sprint Communications conducts business on Pine Ridge and that physical presence is not necessary. Docket 21 at 12-14.

Defendants do not point to any Sprint Communications facilities, equipment, or employees located on Pine Ridge. But physical location, while relevant, is not dispositive because the focal point under *Montana* is the location of the nonmember's activities or conduct.[5] *See Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 937 (8th Cir. 2010). A company—particularly a company providing

---

to the Oglala Sioux Tribal Court to determine the extent of its jurisdiction, the court leaves resolution of tribal jurisdiction over Sprint Inc. in the first instance to the Tribal Court as well.

[5] This is consistent with *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087 (8th Cir. 1998), cited by Sprint. In *Hornell*, the Eighth Circuit explained, "The operative phrase is 'on their reservations.' Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction *over the activities or conduct* of non-Indians occurring *outside their reservations*." *Id.* at 1091 (first emphasis added). At times, the question of where activity or conduct took place may be clear. But when a nonmember begins an activity outside the reservation, the effects of which are directed on to the reservation, it is not clear that such an activity occurred wholly outside the reservation. The precise location of Sprint Communications' activity or conduct should be evaluated by the tribal court when it applies *Montana* in the first instance.

telecommunications services—can enter a consensual relationship with tribal members or a tribe itself or engage in activities or conduct on the reservation without physically entering a reservation. And while Sprint Communications may not own the wires that physically enter Pine Ridge, Sprint Communications provides services using those wires to customers located on Pine Ridge and then bills those customers. Sprint's position would exempt from tribal jurisdiction any business that had no physical presence on a reservation regardless of the degree of contact and involvement it had with tribal members or the impact on the tribe's welfare. That position is inconsistent with the increasingly electronic nature of modern commerce and the overarching federal policy to encourage tribal self-government and self-sufficiency. *See F.T.C. v. Payday Financial, LLC*, 935 F. Supp. 2d 926, 939 (D.S.D. 2013) (noting "the realities of our modern world that a defendant, through the internet or phone, can conduct business on the reservation and can affect the Tribe and tribal members without physically entering the reservation").

*Attorney's Process* also instructs courts to take a functional view of the practical regulatory effect on the nonmember in light of the conduct at issue. *See Attorney's Process*, 609 F.3d at 938. The regulations proposed by the OSTUC are generally aimed at conduct of telecommunications providers that affects tribal members on the reservation. In *DISH Network*, the Eighth Circuit noted that even if the alleged abuse of process occurred off the reservation, the harm arguably occurred on the reservation because the alleged victims were located there and the tort arose out of a contract to provide satellite television

9

on the reservation. *See DISH Network*, 725 F.3d at 884. Although this case does not involve a tort, the regulations proposed by the OSTUC are aimed at protecting consumers on Pine Ridge. Furthermore, the commercial activity that the OSTUC seeks to regulate also forms the basis for Sprint Communications' contact with the reservation and tribal members. In that manner, this case is unlike *Hornell* or the conversion claim in *Attorney's Process* because the alleged torts in those cases had no connection to the reservation. *See DISH Network*, 725 F.3d at 885. Thus, the fact that Sprint Communications has no physical presence on Pine Ridge does not plainly show that Sprint is not subject to tribal jurisdiction under federal law.

Sprint's second argument relates to the small number of customers it has on Pine Ridge. Neither side has argued for or provided a bright line rule requiring a certain number or percentage of customers to be tribal members. In *DISH Network*, tribal jurisdiction was appropriate based on the nonmember satellite television provider's contract with a single tribal member. *See id.* at 879. The Supreme Court's reasoning in *Plains Commerce Bank* also indicates that the degree of regulation relative to the degree of connection to the reservation may be considered as part of the determination of tribal jurisdiction. *See Plains Commerce Bank*, 554 U.S. at 337-38 (discussing a bank's commercial relationships with tribal members as a reason the bank would not be surprised by some degree of tribal regulation, but that "when it comes to tribal regulatory authority, it is not 'in for a penny, in for a Pound' "). If some proportional degree of tribal regulation is appropriate based on a

nonmember's connection to the reservation, then the propriety of the tribal regulations in this case is a question of proportion and not a question of jurisdiction. Although the number of Sprint Communications customers on Pine Ridge is small, it is not plain that the OSTUC is completely unable to regulate Sprint Communications on that basis alone.

The fact that Sprint Communications is exiting the residential wireline service sector does not alter that outcome. Sprint Communications has not yet exited the residential wireline long-distance market and is currently still providing that service on Pine Ridge. *See* Docket 34 at 2 (stating that Sprint Communications customers will need to find a new carrier by September 19, 2015). Also, Sprint Communications would still serve the two business entities. *See id.* Although those entities are incorporated under South Dakota law, the parties do not address whether those businesses are also licensed to do business on Pine Ridge or how the court should evaluate the impact of Sprint Communications' service to those businesses. Questions of tribal membership should be determined by a tribal court. *See Heldt v. Payday Financial LLC*, 12 F. Supp. 3d 1170, 1184 (D.S.D. 2014) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.")) Given that unresolved factual and legal question, the court is unable to determine that the Oglala Sioux Tribal Court would plainly be without jurisdiction.

11

When discussing the challenges inherent in determining tribal civil jurisdiction over nonmembers, the Eighth Circuit has observed:

> The controlling principles are broad and abstract and must be carefully applied to the myriad of factual scenarios they govern. Determining the contours of tribal civil jurisdiction and the boundaries of tribal sovereignty requires consideration of the historical scope of tribal sovereignty and the evolving place of the tribes within the American constitutional order, careful study of precedent, and ultimately a 'proper balancing' of the conflicting interests of the tribes and nonmembers.

*Attorney's Process*, 609 F.3d at 934. The location of Sprint Communications' activities and conduct and the contact between Sprint Communications and tribal members do not conclusively reveal a lack of tribal jurisdiction. Thus, it does not plainly appear that tribal jurisdiction in this matter is frivolous or obviously invalid. As a matter of comity, the tribal court should have the first opportunity to balance the interests involved and determine its jurisdiction.

## II.     Federal Preemption

Sprint argues that "Congress has determined that regulation of interstate telecommunications [is] exclusively federal." Docket 13 at 21-22. Sprint then cites several authorities regarding the FCC's broad power. According to Sprint, because the Oglala Sioux Tribe's role in telecommunications regulation has been preempted, it is plain that the Tribe has no jurisdiction in this matter.

The role tribes play in regulating telecommunications is not as clear as Sprint suggests. At the turn of this century, the FCC acknowledged that Native American tribes have a role in ensuring that "all Americans, in all regions of the United States, have the opportunity to access telecommunications and information services" and that "certain communities, particularly Indian

12

reservations and Tribal lands, remain underserved[.]" *In the Matter of Statement of Policy on Establishing a Government-to-Government Relationship with Indian Tribes*, 16 FCC Rcd 4078 at *1 (FCC 2000). The FCC has further recognized that Indian tribes are sovereign and that it would "endeavor to work with Indian Tribes on a government-to-government basis consistent with the principles of Tribal self-government to ensure . . . that Indian Tribes have adequate access to communications services." *Statement of Policy*, 16 FCC Rcd 4078 at *2. Thus, the FCC has expressed a need to include Indian tribes as an active partner in telecommunications regulation.

Accordingly, the FCC has found that tribes can possess the authority to regulate telecommunications services on tribal land. *See In the Matter of Western Wireless Corporation*, 16 FCC Rcd 18145 (FCC 2001). In *Western Wireless*, a carrier sought to deploy a wireless service to members of the Oglala Sioux Tribe on Pine Ridge. *Id.* at ¶ 6. The SDPUC and the Oglala Sioux Tribe both claimed jurisdiction over Western Wireless and sought a determination from the FCC on which regulatory entity had authority over Western Wireless. The FCC noted that the "case presents the issue of the extent of tribal authority over a non-tribally owned carrier that intends to serve both tribal members and others on the reservation." *Id.* at ¶ 13.

The FCC found that the regulatory question presented was not an instance where federal policy preempted state regulation *Id.* at ¶ 12. After discussing *Montana,* the FCC concluded that the agreement between Western Wireless and the Oglala Sioux Tribe in which Western Wireless consented to

13

tribal jurisdiction satisfied the first *Montana* exception. *Id.* at ¶¶ 14-15. Ultimately, the FCC found that both the state and the Tribe had regulatory authority over certain aspects of Western Wireless's services. *Id.* at ¶ 23 ("We conclude, therefore, that under principles of federal Indian law, the Tribe has jurisdiction over aspects of Western Wireless' service to tribal members living within the Reservation boundaries, but the State commission has authority over the carrier's provision of service to non-tribal members."). Thus, the fact that the FCC has broad jurisdiction over interstate telecommunications does not prevent tribes from exercising some jurisdiction over certain telecommunication services, subject to *Montana*'s limitations. It is therefore not plain that the Tribe's jurisdiction would be frivolous or obviously invalid.

It is unclear whether Sprint also intends to argue that tribal jurisdiction violates an express jurisdictional prohibition. The Eighth Circuit has interpreted the "express jurisdictional prohibition" exception to the exhaustion doctrine narrowly, reserving it for instances where "the very tribal *remedies* which the plaintiffs would have had to exhaust before challenging tribal authority in federal court were preempted by express statutory provisions." *Reservation Tel. Co-op. v. Three Affiliated Tribes of Fort Berthold Reservation*, 76 F.3d 181, 185-86 (8th Cir. 1996) (emphasis in original). " 'A substantial showing must be made by the party seeking to invoke [the express jurisdictional prohibition] exception to the tribal exhaustion rule.' " *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 910 F. Supp. 2d 1188, 1197

14

(D.S.D. 2012) (quoting *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1502 (10th Cir. 1997)).

The Eighth Circuit has applied that exception when federal legislation placed exclusive jurisdiction for a claim brought under that statute in a federal forum. *See Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097-98 (8th Cir. 1989) (holding that exhaustion of tribal remedies was not required because Congress placed exclusive jurisdiction for claims under the Resource Conservation and Recovery Act in federal court). In the telecommunications field, this court found that Congress preempted tribal jurisdiction over claims brought under a federal statute by limiting jurisdiction over those claims to the FCC or federal courts and leaving " '*no room* for adjudication in any other forum—be it state, tribal, or otherwise.' " *Sprint Commc'ns Co., L.P. v. Native American Telecom, LLC*, No. CIV. 10-4110-KES, 2010 WL 4973319, at *5 (D.S.D. Dec. 1, 2010) (quoting *AT & T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002) (emphasis in original)). The Eighth Circuit has also found tribal jurisdiction preempted where Congress expressly prohibited any state or tribal ordinance that was an obstacle to the accomplishment of the federal legislation at issue. *See N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460-62 (8th Cir. 1993) (discussing the Hazardous Materials Transportation Act).

Unlike those cases, in this case Sprint does not show that the OSTUC is pursuing a remedy in tribal court that Congress has expressly prohibited or limited to another forum. Nor does Sprint point to any provision of federal law

15

that excludes all state or tribal regulations. Instead, Sprint makes a general jurisdictional argument of the type the Eighth Circuit has distinguished from other express jurisdictional prohibitions. *See Reservation Tel. Co-op.*, 76 F.3d at 185 (noting that a broad interpretation of express jurisdictional prohibitions "would render the exhaustion requirement virtually meaningless, allowing a tribal court to assert jurisdiction over an action only after a federal court had effectively determined the merits of the case"). As discussed above, tribes possess some regulatory powers in the telecommunications field, even if those powers are not as broad as the powers vested in the FCC and are limited by *Montana*. In the absence of expressly prohibited remedies or a specific statement by Congress that it intends to exclude tribes from all telecommunications regulation, tribal jurisdiction in this case is not patently violative of an express jurisdictional prohibition.

Sprint suggests that the comprehensive nature of FCC authority implicitly displaces tribal authority by occupying the field of telecommunications regulation. In *Bruce H. Lien*, the Eighth Circuit addressed whether the Indian Gaming Regulatory Act (IGRA) preempted tribal civil jurisdiction over a gaming dispute. Although the Eighth Circuit acknowledged that IGRA was sufficiently comprehensive to preempt state law, it did not conclude that IGRA also "divest[ed] tribal courts of jurisdiction regarding reservation affairs." *Bruce H. Lien*, 93 F.3d at 1421. Further, the Eighth Circuit emphasized that under the exhaustion doctrine tribal courts should act first to determine whether IGRA preempted tribal jurisdictions, stating:

> It is true that under certain circumstances, preemptive federal statutes may serve to relieve a party from exhausting tribal court remedies, or may serve to curtail the tribe's power to assert jurisdiction. These notions notwithstanding, it bears repeating that under the exhaustion doctrine, the tribal courts themselves are given the first opportunity to address their jurisdiction and explain the basis (or lack thereof) to the parties.

*Id.* (internal citations and quotations omitted). If the court accepted Sprint's argument that federal law occupies the field of telecommunications regulation and completely displaces tribal regulations, that finding would imply that federal law displaces state regulations as well. And the FCC itself has stated that tribes (and states) have a role to play in telecommunications regulation and that the existence of tribal regulations is not incompatible with federal law and regulations.

Sprint also asserts that some of the specific tribal regulations conflict with FCC regulations or usurp FCC authority. *See* Docket 13 at 12-14 (discussing related cases T-2-2014 and T-3-2014 that set tribal rules on when an IXC may refuse to pay an invoice and provision of lifeline services); *id.* at 24-25 (same). But even if the OSTUC implemented individual regulations that cannot be upheld because they exceed the scope of OSTUC's authority, that would not wholly divest the tribe of jurisdiction. The tribal court can consider whether specific regulations are proper exercises of tribal regulatory jurisdiction.

Despite the prominence of the FCC in telecommunications regulation, the OSTUC's assertion of jurisdiction is based on tribal regulations and not on a federal statute that provides for exclusive jurisdiction in a federal forum.

17

Thus, this case does not involve an express jurisdictional prohibition. Tribes, like states, are not prohibited from regulating telecommunications. Although questions remain about the regulations at issue in this case, it is not plain that tribal jurisdiction is frivolous or obviously invalid. Under the exhaustion doctrine, the tribal court is entitled to define the limits of its jurisdiction.

**III.   Stay**

When a federal court defers to a tribal court under the tribal exhaustion doctrine, "[t]he district court should either dismiss th[e] case without prejudice for failure to exhaust tribal remedies, or should stay any proceedings until those remedies are exhausted." *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294, 1301 (8th Cir. 1994). The parties do not address what action the court should take to implement its decision to defer to the tribal court. The Supreme Court and Eighth Circuit have not set forth a specific test or rule for district courts to follow in deciding whether to dismiss without prejudice or stay an action after finding that exhaustion is required. *See Iowa Mut.*, 480 U.S. at 19 n.14 (remanding for consideration of whether a stay or dismissal is appropriate); *Nat'l Farmers*, 471 U.S. at 857 (leaving dismissal or stay up to the trial court); *Bruce H. Lien*, 93 F.3d at 1422 ("[I]t appears that the orderly administration of justice requires the District Court to stay its proceedings pending a determination by the Tribal Court of that court's jurisdiction[.]"); *Duncan,* 27 F.3d at 1301. Neither party has requested dismissal of this action. After Sprint exhausts its tribal remedies, the tribal court's jurisdictional determination would be subject to review in this court.

18

*See Iowa Mut.*, 480 U.S. at 19 (noting that a tribal court's "determination of jurisdiction is ultimately subject to review" in federal court). A stay promotes the orderly administration of justice because it would allow for efficient review of the tribal court's decision, if necessary. This action is stayed pending exhaustion of tribal remedies on the question of tribal court jurisdiction over Sprint Inc. and Sprint Communications.

## CONCLUSION

As the FCC has recognized, tribes have a role to play in the regulation of telecommunications services. This court respects the tribal court's prerogative to settle questions of its jurisdiction and to explain the basis for its acceptance or rejection thereof. Sprint has not demonstrated that tribal jurisdiction in this matter violates an express jurisdictional prohibition or that tribal jurisdiction plainly does not exist and will only serve to delay these proceedings. Because exhaustion of tribal remedies is required as a matter of comity, the court denies Sprint's motion for a preliminary injunction. In doing so, the court does not hold that tribal jurisdiction over Sprint is ultimately proper under *Montana*, only that the tribal court should be given the first opportunity to resolve that question. Under these facts, it is proper to stay this action pending Sprint's exhaustion of its tribal remedies. Accordingly, it is

ORDERED that Sprint's motion to supplement the record (Docket 33) is granted.

IT IS FURTHER ORDERED that Sprint's motion for a preliminary injunction (Docket 12) is denied.

IT IS FURTHER ORDERED that this action is stayed until further order of the court. The parties will keep the court advised of proceedings in the Oglala Sioux Tribal Court.

Dated August 4, 2015.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE